CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 02 2014
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| KELLY S. CHADWELL, ) | |
| ) | Civil Action No. 2:14-CV-00003 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| ) | By: Hon. Glen E. Conrad |
| LISA BREWER, et. al., ) | Chief United States District Judge |
| ) | |
| Defendants. ) | |

This case arises from Plaintiff Kelly Chadwell's termination from his position as a special education teacher in Lee County, Virginia. Chadwell alleges that the individual defendants violated his constitutional rights, and that the Lee County School Board ("Lee County") violated the Family and Medical Leave Act ("FMLA"). The case is presently before the court on three motions: (1) the motion to dismiss filed by Defendants Lisa Brewer, Don Williams, Ty Harber, Kyle Chadwell, Mike Twigg, Debbie Jessee, Mark Carter, and Lee County (collectively, "the school defendants"); (2) the motion to dismiss filed by Defendant Gregory Edwards; and (3) the motion for summary judgment filed by Defendants Gary Parsons and Bobby Ellis. For the following reasons, these motions will be granted.

### Statement of Facts[1]

Chadwell was employed by Lee County from August 2003 until his termination in 2013. He worked as a special education teacher at Jonesville Middle School ("JMS") for the two years

---

[1] These facts, taken from the complaint and the parties' Stipulations Regarding Allegations Against Defendant Gregory D. Edwards, Docket No. 42, are accepted as true at this stage in the proceedings. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (stating that the court must accept the complaint's factual allegations as true when ruling on a motion to dismiss). Parsons and Ellis have further developed the factual record by attaching exhibits and affidavits to their motion for summary judgment. On summary judgment, the court must consider the record as a whole in the light most favorable to the plaintiff. See Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986). The court has reviewed this evidence. Because the court concludes that the same analysis applies to all defendants, however, these additional facts are not included here, as they are irrelevant to disposition of this case.

immediately preceding his termination. During his time at JMS, Chadwell was afforded the use of a secluded office located at the end of a dead-end hallway. Chadwell shared this office with a teacher's aide who used it to store her belongings, entering only briefly at the beginning and end of each workday. Others rarely entered the office. For example, Principal Lisa Brewer visited Chadwell's office only once during the two years he worked at JMS.

At some point during Chadwell's employment at JMS, Brewer suspected that he was drinking alcohol in his office during school hours. She did not speak with Chadwell directly about her concerns. Instead, Brewer approached Mark Carter, Lee County Superintendent, and Gregory Edwards, counsel for Lee County, about placing a video camera in Chadwell's office. At the request of Brewer, Carter, and Edwards, Lee County Deputy Sheriff Bobby Ellis put a video camera, hidden inside a stuffed animal, in the office to record Chadwell's activities. Each day, Ellis downloaded the footage, which was reviewed by Brewer and Carter, as well as School Board members Don Williams, Ty Harber, Kyle Chadwell, Mike Twigg, and Debbie Jessee. On one occasion, the video footage showed Chadwell drinking a can of beer at his desk.

After reviewing this footage, Brewer and Carter confronted Chadwell and demanded that he sign a "Last Chance Agreement" (the "Agreement") or face termination. This Agreement required that Chadwell (1) take paid leave to participate in a thirty-day in-patient alcohol rehabilitation treatment program, (2) never drink alcohol again, (3) permit Lee County to withhold $250 a month from his paycheck to defray the costs of hiring a replacement during his leave, and (4) sign a full release of all medical records regarding his treatment to the school defendants. Chadwell signed the Agreement to avoid losing his job, even though he strongly disagreed with its terms.

Pursuant to the Agreement, Defendants obtained Chadwell's medical records during his leave. These records revealed statements Chadwell made to his counselor, including admissions that he drank a beer at the Kentucky Derby and that he did not remain in an in-patient alcohol

2

rehabilitation program for thirty days as required by the Agreement. Lee County terminated Chadwell's employment on August 13, 2013 as a result of these violations.

## Procedural History

Chadwell commenced this action on January 22, 2014, naming Brewer, Carter, Edwards, Ellis, Parsons, Williams, Harber, Chadwell, Twigg, Jessee, and Lee County as defendants. In his complaint, Chadwell asserts a claim against the individual defendants under § 1983, contending that they violated his constitutional rights when they placed a hidden video camera in his office. Chadwell also asserts a claim against Lee County, alleging that it violated the FMLA by requiring him to pay for his FMLA leave. Chadwell seeks compensatory, punitive, and liquidated damages, reinstatement to his former position, and attorney's fees and costs.

The defendants in this action have proceeded in three groups. First, the school defendants moved to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure on April 8, 2014, Docket No. 35. The court held a hearing on this motion on June 17, 2014, and then took the motion under advisement in anticipation of hearings on similar motions filed by the other defendants. Edwards filed a filed a Rule 12(b)(6) motion to dismiss on June 13, 2014, Docket No. 44.[2] Parsons and Ellis filed an answer to the complaint on March 20, 2014, Docket No. 34, and then filed a motion for summary judgment on August 8, 2014, Docket No. 54. In response, Chadwell filed a motion to stay summary judgment pending discovery on August 15, 2014, Docket No. 58. The court held a hearing on Edwards' motion to dismiss, Parsons and Ellis's motion for summary judgment, and Chadwell's motion to stay on August 20, 2014.

---

[2] Edwards' motion to dismiss was delayed due to his initial filing of a motion for a more definite statement on March 17, 2014, Docket No. 31. That motion was resolved by the parties' Stipulations Regarding Allegations Against Defendant Gregory D. Edwards, Docket No. 42.

3

These motions, along with the school defendants' earlier motion to dismiss, have been extensively briefed[3] and are now ripe for review.

## Standard of Review

A 12(b)(6) motion to dismiss tests the sufficiency of the complaint. Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006). When considering a motion to dismiss, the court must accept the well-pled facts in the complaint as true and make all reasonable inferences in the plaintiff's favor. Bell Atlantic v. Twombly, 550 U.S. 540, 570 (2007). However, the court need not accept as true any legal conclusions disguised as factual allegations. See Ashcroft v. Iqbal, 556 U.S. 662, 679–81 (2009). The plaintiff's allegations need not be detailed, but he must offer more than "labels and conclusions" or a "formulaic recitation of the elements of [the] cause of action" in order to survive a motion to dismiss. Twombly, 550 U.S. at 555. Ultimately, the complaint's allegations must "be enough to raise a right to relief above the speculative level." Id.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a party's evidence to raise a genuine issue of material fact sufficient to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). As with a motion to dismiss, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in his favor when considering a motion for summary judgment. Id. at 255; see also Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

---

[3] Following its hearing on August 20, 2014, the court permitted the parties to file additional briefing. This resulted in a flurry of new filings, including a supplemental brief in support of the school defendants' motion to dismiss, Docket No. 65, and a motion for summary judgment filed by the school defendants, Docket No. 66, as well as a motion for summary judgment filed by Edwards, Docket No. 68. Because the court believes that Chadwell's claims must be dismissed based on the defendants' original arguments, as discussed here, these additional motions will be dismissed as moot.

4

## Discussion

### I. Chadwell's § 1983 Claim:

Chadwell brings his first claim pursuant to § 1983, which imposes civil liability for constitutional violations committed under color of state law. Specifically, Chadwell contends that the ten individual defendants named in his complaint violated his Fourth Amendment right to be free from illegal search when they conspired to put a hidden video camera in his office. See Compl. ¶¶ 14, 23-28. Chadwell seeks both reinstatement and damages. In moving to dismiss the complaint, Defendants argue that they cannot be held liable for prospective injunctive relief in their individual capacities, and that Chadwell's damages claim is barred by the doctrine of qualified immunity. The court agrees on both accounts.

### a. *Injunctive Relief*

Chadwell seeks injunctive relief in the form of reinstatement to his "former position and employment." Compl. ¶ 11. Although "[r]einstatement is generally recognized to be an appropriate remedy for wrongful termination," it is "an equitable remedy that may be directed only at liable defendants in their official capacities or at municipal entities themselves."[4] Rao v. New York City Health and Hospitals Corp., 882 F. Supp. 321, 329, 330 (S.D.N.Y. 1995) (citing Frank v. Relin, 1 F.3d 1317 (2d Cir. 1993)). In this case, Chadwell filed suit against Defendants "in their individual capacities in the Section 1983 action." Compl. ¶ 3. Lee County, Chadwell's former employer, is named as a defendant to Chadwell's FMLA claim only. See id. Defendants, acting in their individual capacities, cannot reinstate Chadwell, so his claim for injunctive relief must be dismissed. See, e.g., Kobe v. Haley, No. 3:11-1146, 2013 WL 4056335, at *4 (D.S.C. Aug. 12,

---

[4] The distinction between personal and official capacity suits is significant, because "to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right," whereas "[m]ore is required in an official-capacity action... the entity's policy or custom must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal citations omitted).

5

2013) (dismissing claim when plaintiffs "cannot obtain prospective injunctive relief from…Defendants in their individual capacities as they would not have the authority to provide such relief in their individual capacities.").

### b. *Qualified Immunity*

Chadwell's damages claim must also be dismissed, because Defendants are entitled to qualified immunity in this case. "Qualified immunity shields government officials performing discretionary functions from personal capacity liability for civil damages under § 1983, 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006) (quoting Wilson v. Lane, 526 U.S. 603, 609 (1999)). This doctrine "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Because qualified immunity is "an immunity from suit rather than a mere defense to liability," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985), the Supreme Court has "repeatedly…stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).

A government official is entitled to qualified immunity unless (1) the facts, when viewed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right, and (2) the right violated was "clearly established" when the violation occurred. Henry v. Purnell, 501 F.3d 374, 376-77 (4th Cir. 2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To be clearly established, "the contours of the right [must be] sufficiently clear so that a reasonable [official] would have understood, under the circumstances, that his behavior violated that right." Campbell v. Galloway, 483 F.3d 258, 271 (4th Cir. 2007). In other words, "existing

6

precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011). At bottom, qualified immunity ensures that public officials are not personally liable "for bad guesses in gray areas; they are liable for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992) (citing Anderson v. Creighton, 483 U.S. 635, 639-40 (1987)).

The court must first consider whether Chadwell has alleged a constitutional violation at all. Chadwell contends that the individual defendants violated the Fourth Amendment when they conspired to place a hidden video camera in his school office. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures…" U.S. Const. amend. IV. "Individuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer." O'Connor v. Ortega, 480 U.S. 709, 717 (1987). When considering whether a search conducted by a supervisor for work-related purposes violates the Fourth Amendment however, courts must balance "invasion of the employees' legitimate expectations of privacy against the government's need for supervision, control, and the efficient operation of the workplace." Id. at 719-20. In Ortega, the Supreme Court set forth a two-step test for determining whether a workplace search impermissibly invaded constitutionally protected rights: An employee must first demonstrate that he had "an expectation of privacy that society is prepared to consider reasonable" in the area searched, and then show that his government employer violated this expectation by conducting an unreasonable search. Id. at 715, 720; see also Francis v. Giacomelli, 588 F.3d 186, 194 (4th Cir. 2009) (applying Ortega).

"[W]hether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis." Id. at 718. The "operational realities" of a government office may limit or even eliminate a public employee's reasonable expectation of privacy in their offices, desks, and file cabinets in some circumstances, because "[a]n office is seldom a private enclave free from entry

7

by supervisors, other employees, and business and personal invitees." Id. at 717. In fact, "some government offices may be so open to fellow employees or the public that no expectation of privacy is reasonable." Id.

Here, Chadwell's complaint alleges that his office was located at the end of a dead-end hallway and was rarely visited by anyone other than the teacher's aide who stored her belongings there. Compl. ¶¶ 21-22. The defendants, however, argue that Chadwell had no reasonable expectation of privacy in his office – both because he shared that area with another employee, and because "the public school setting [constitutes] an enclave of lowered expectations of privacy because public school administrators have the heightened burden of providing a safe haven for students." United States v. Aguilera, 287 F. Supp. 2d 1204, 1208 (E.D. Cal. 2003) (citing New Jersey v. T.L.O., 469 U.S. 325, 341 (1985)). The court agrees that Chadwell's privacy expectations were likely tempered by the shared nature of the space and the realities of the school environment itself. Nonetheless, Chadwell has pleaded sufficient facts at this stage in the proceedings to suggest that he had at least some expectation of privacy in his office. See Ortega, 480 U.S. at 730 ("It is privacy that is protected by the Fourth Amendment, not solitude.") (Scalia, J., concurring).

That Chadwell may have had a reasonable expectation of privacy in his office is only the beginning of the Fourth Amendment analysis, however. See Ortega, 480 U.S. at 719. The court must next determine whether Defendants' search of Chadwell's office was reasonable. What is reasonable under the Fourth Amendment "'depends on the context within which a search takes place.'" Id. (quoting T.L.O., 469 U.S. at 337). In the workplace context, the Supreme Court has held that

> public employer intrusions on the constitutionally protected privacy interests of government employees for noninvestigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances. Under this reasonableness standard, both the inception and the scope of the intrusion must be reasonable.

8

Id. at 725-26. This reasonableness inquiry balances the "substantial government interests in the efficient and proper operation of the workplace" with the lesser privacy interests of employees in their place of employment. Id. at 725 (noting that an employee's place of work implicates "far less" privacy interests "than those found at home or in some other contexts").

An employer's search is "'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the employee is guilty of work-related misconduct." Id. at 726. In this case, Chadwell's complaint alleges that Defendants searched his office because Brewer "suspected [Chadwell] of drinking alcohol on the job" in violation of Lee County policies. Compl. ¶ 10. Chadwell does not plead any facts suggesting that Brewer's suspicion was unfounded; indeed, Chadwell's decision to sign the Last Chance Agreement after Defendants "alleged the [video] footage depicted [him], on one occasion, drinking a can of beer in his office" suggests the opposite. Compl. ¶ 14-15. Regardless, Brewer's "individualized suspicion" of Chadwell makes Defendants' search reasonable at its inception. See Ortega, 480 U.S. at 726; see also T.R.O., 469 U.S. at 341-42.

The court must next consider whether Defendants' search was reasonable in scope, which presents a somewhat closer question. A search is permissible in scope when "'the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of...the nature of the [misconduct].'" Ortega, 480 U.S. at 726 (quoting T.R.O., 469 U.S. at 342). Defendants' hidden video surveillance was certainly reasonably related to determining whether Chadwell was drinking in his office. Nonetheless, Chadwell contends that this method was excessively intrusive, relying on case law from other jurisdictions for the proposition that "video surveillance can result in extraordinarily serious intrusions into personal privacy." United States v. Koyomejian, 970 F.2d 536, 551 (9th Cir. 1992) (Kozinski, J., concurring); see Pl.'s Br. in Opp. to Sch. Def.'s Mot. to Dismiss at 7, Docket No. 38.

9

The court acknowledges that surreptitious video surveillance presents unique constitutional concerns, but Chadwell's reliance on dicta from criminal opinions is misplaced.[5] An employer's work-related search of an employee's office is judged by a reasonableness standard that is less stringent than the probable cause and warrant requirements imposed on law enforcement officials in the criminal context. See Ortega, 480 U.S. at 720-726; see also United States v. Taketa, 923 F.2d 665, 676 (9th Cir. 1991) (stating that the video surveillance of criminal conduct in that case "was not an investigation of work-related employee misconduct that could benefit from the reasonableness standard of O'Connor [v. Ortega]").

Courts are divided on the question of whether video surveillance is reasonable in the context of workplace searches like the one presented here. For example, in Richards v. Cnty. of Los Angeles, 775 F. Supp. 2d 1176, 1186, 1184-85 (C.D. Cal. 2011), a California district court held that "constant and indiscriminate" video surveillance of a private dispatch room was an "excessively intrusive" means of investigating allegations that one dispatcher was engaging in sexual activity during her shifts, particularly given that the camera recorded other employees who were not suspected of misconduct and was designed to record intimate acts. On the other hand, in Thompson v. Johnson Cnty. Cmty. Coll., 930 F. Supp. 501, 507 (D. Kan. 1996), aff'd 108 F.3d 1388 (10th Cir. 1997), a Kansas district court found that video surveillance of an employee locker area was reasonable in scope as a matter of law, because the employer "established the video surveillance for a limited time period to confirm or dismiss…allegations [of employee misconduct]." See also Brannen v. Kings Local Sch. Dist. Bd. of Educ., 761 N.E.2d 84, 91 (Ohio Ct. App. 2001) (finding video surveillance of school custodians used to confirm allegations of excessive breaks was

---

[5] Chadwell's Brief in Opposition to the School Defendants' Motion to Dismiss states that "[m]any other courts have ruled on the severity of covert video surveillance." Pl.'s Br. at 7, Docket No. 38 (emphasis added). However, while the portions of the opinions that Chadwell quotes in his brief offer excellent sound bites supporting his position, they do not represent the holdings of any of the opinions cited. In fact, many of these opinions hold that video surveillance is appropriate, despite its intrusive nature. See, e.g., Koyomejian, 970 F.2d at 542 (holding that the Fourth Amendment applies to secret video surveillance and finding its requirements satisfied).

10

reasonable in scope when the camera recorded only what the supervisor could have seen with the naked eye). No Fourth Circuit case addresses whether hidden video surveillance is excessively intrusive under Ortega.

The court finds it difficult to believe that a hidden video camera, used over a limited period of time to confirm or deny Defendants' particularized suspicion regarding Chadwell drinking alcohol on the job, would violate Chadwell's constitutional rights – particularly given Chadwell's "significant responsibilities" as a special education teacher and the correspondingly "severe" consequences that could result from his misconduct. Ortega, 480 U.S. at 724; see also Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 656 (1995) (noting that "Fourth Amendment rights…are different in public schools than elsewhere; the 'reasonableness' inquiry cannot disregard the schools' custodial and tutelary responsibility for children."). Given the limited and conflicting case law on this issue, the court certainly cannot conclude that Defendants' actions violated any "clearly established" constitutional right. See Jones v. Houston Cmty. Coll. Sys., No. H-10-2356, 2012 WL 3155573, at *11 (S.D. Tex. Aug. 2, 2012) (granting defendants qualified immunity, because "at the time of the alleged constitutional violation, [neither] controlling authority [nor] a robust consensus of persuasive authority defined a right to be free from covert video surveillance…with the high degree of particularity required to find a clearly established right."). Defendants are thus entitled to qualified immunity on Chadwell's § 1983 damages claim, which will be dismissed.[6]

---

[6] Chadwell's complaint asserts that "[t]his action arises under…the provisions of the First, Fourth, Fifth, and Fourteenth Amendments." Compl. ¶ 1. Chadwell fails to allege a single fact related to a free speech violation. Thus, to the extent that Chadwell asserts a First Amendment claim, that claim must be dismissed. See Twombly, 550 U.S. at 555.

Chadwell's complaint also alleges that his procedural and substantive due process rights were violated when Defendants used the "illegally obtained" video to coerce him into signing the Agreement, which in turn allowed Defendants to review his medical records and ultimately terminate him. Compl. ¶¶ 26-33. Chadwell refers to the Agreement and his subsequent termination as "fruit of the poisonous tree." Id. at ¶ 28. Chadwell abandoned this claim on brief by failing to respond to Defendant's arguments, so the court need not address it here. See Chamblee v. Old Dominion Sec. Co., LLC, No. 3:13-CV-820, 2014 WL 1415095, at *8 (E.D. Va. April 11, 2014). The court notes, however, that the "fruit of the poisonous tree" is an exclusionary rule designed to deter Fourth Amendment violations by preventing the admission of evidence derived from illegal searches in criminal trials. See Pennsylvania Bd. of Prob. & Parole v. Scott, 524 U.S. 357, 362 (1998) (citations omitted). It is not applicable to this civil action. See Ware v.

11

## II. Chadwell's FMLA Claim:

Chadwell brings his second claim against Defendant Lee County pursuant to the Family and Medical Leave Act ("FMLA" or the "Act"), 29 U.S.C. §§ 2601-2654. Under the FMLA, eligible employees are entitled to "a total of 12 workweeks of leave during any 12-month period" for certain health or family reasons. 29 U.S.C. § 2612(a). FMLA leave need not be paid. Id. at § 2612(c). Alternatively, an employer can require paid leave taken under an existing plan to be counted toward an employee's available FMLA leave. See 29 C.F.R. § 825.300(d). An employer violates the Act when it "interfere[s] with, restrain[s], or den[ies] [an employee's] exercise or attempt to exercise" his FMLA rights. 29 U.S.C. § 2615(a). To succeed on an unlawful interference claim under the Act,

> an employee must prove that: (1) he was an eligible employee; (2) his employer was covered by the statute; (3) he was entitled to leave under the FMLA; (4) he gave his employer adequate notice of his intention to take leave; and (5) the employer denied his FMLA benefits to which he was entitled.

Croy v. Blue Ridge Bread, Inc., No. 3:12-CV-00034, 2013 WL 3776802, at *8 (W.D. Va. July 15, 2013) (quoting Rodriguez v. Smithfield Packing Co., 545 F. Supp. 2d 508, 516 (D. Md. 2008)) (internal citations omitted). Chadwell has failed to allege any facts relating to the first four elements of an FMLA interference claim. The court will assume for the purposes of this decision that those requirements have been satisfied, however, and focus on whether Lee County denied Chadwell any FMLA benefits to which he was entitled.

---

James City Cnty., Va., 652 F. Supp. 2d 693, 705 (E.D. Va. 2009) ("[T]he fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant"). To the extent that Chadwell alleges additional constitutional violations resulting from the initial Fourth Amendment violation he alleges, those claims are also dismissed.

    Because the court concludes that all Defendants in this case are entitled to qualified immunity for whatever role they played in the conspiracy alleged by Chadwell, the court does not reach Defendants' other arguments for dismissal or summary judgment.

12

Chadwell alleges that Lee County "required [him] to make payments of [$250] per month…to exercise his rights under the Act" pursuant to the Agreement that he and Lee County executed following Defendants' video surveillance of his office. Compl. ¶ 37. The Agreement signed by Chadwell reads as follows:

> While I [Chadwell] am attending…an in-patient alcohol treatment program, I will be considered to be on extended leave with pay and the benefits to which I have been afforded immediately prior to the execution of this Agreement. I hereby agree to a withholding by the Board of $250 per month from my salary for each of the next 12 months. Any Family and Medical Leave Act (FMLA) leave to which I am entitled shall be used in connection with my extended leave.

Last Chance Agreement ¶ 4, School Def.'s Mot. to Dismiss Ex. A, Docket No. 36-1. In accordance with these terms, Chadwell continued to receive his salary, minus the $250 set forth in the Agreement, for the five months between signing the Agreement on March 17, 2013 and his termination on August 13, 2013. See Compl. ¶¶ 9, 18.

Chadwell's complaint fails to allege that Lee County "denied his FMLA benefits to which he was entitled." Croy, 2013 WL 3776802, at *8. Lee County continued to pay his salary even though the FMLA permits leave without pay. Lee County then counted Chadwell's extended leave against any FMLA leave to which he was entitled, in accordance with the Act. The requirement that Chadwell pay $250 per month "to help defray costs of his replacement," Compl. ¶ 17, does not "interfere with, restrain, or deny [Chadwell's] exercise or attempt to exercise" his FMLA rights. 29 U.S.C. § 2615(a). The Agreement's somewhat imprecise language may have regrettably caused Chadwell to believe that the $250 withholding was linked to his rights under the Act, but this misunderstanding cannot create a statutory violation where one otherwise does not exist. Employers "cannot be punished for offering benefits greater than what is required under the FMLA," as Lee County did here. Croy, 2013 WL 3776802, at *8 (emphasis in original). Chadwell's FMLA claim must therefore be dismissed.

13

## Conclusion

For the reasons stated, the court will grant the school defendants' motions to dismiss, Defendant Edwards' motion to dismiss, and Defendants Parsons and Ellis' motion for summary judgment. The remaining motions will be dismissed as moot, and the case will be stricken from the active docket of the court. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This __1st__ day of October, 2014.

*/s/ Jim Conrad*
Chief United States District Judge